## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND GARY J. MEYERS, in his official capacity as a fiduciary, 1750 New York Avenue, N.W. Washington, DC 20006-5387 | ) ) ) ) ) ) ) | |
| Plaintiffs | ) | CIVIL ACTION NO. |
| v. | ) ) | |
| HUBI CONSTRUCTION CORP. d/b/a HUBI CONST. CORP. 40-09 73rd Street, Suite 9 Woodside, NY 11377 | ) ) ) ) ) ) | |
| Defendant | ) | |

### COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

### JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331.  The claims asserted are all made under federal statutes or federal common law, but the supplemental jurisdiction of the Court under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.     A copy of this Complaint is being served on the Secretary of Labor and the Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. §1132(h) .

### VENUE

3.     Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C. §185(a) and/or 28 U.S.C. §1391(b).

194893.1

## PARTIES

4.      Plaintiff International Painters and Allied Trades Industry Pension Fund ("Fund"

or "Pension Fund"), f/k/a International Painters and Allied Trades Union and Industry Pension

Fund and a/k/a International Union of Painters and Allied Trades Union and Industry Pension

Fund, "I.U.P.A.T. Union and Industry Pension Fund" or "I.U.P.A.T. Union and Industry National

Pension Fund", is a trust fund established under 29 U.S.C. §186(c)(5).  Its Trustees are the

"named fiduciary," "plan administrator" and "plan sponsor" and each is an individual

"fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the International

Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and

Allied Trades Industry Annuity Plan ("Annuity Plan").  The Pension Plan and Annuity Plan are

each a "multiemployer plan," "employee benefit plan" and "employee benefit pension plan"

within the meaning of 29 U.S.C. §1002(37), (2) and (3).  The Fund, Pension Plan and Annuity

Plan maintain their principal place of business and are administered from an office in this district

at the address for the Fund in the caption of this Complaint.

5.      Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a

fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of

contributions due the Funds and related matters. He has a business address as listed in the caption

and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as

organizations.

6.      The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

(a)      the Pension Plan,

(b)      the Annuity Plan,

(c)     the Political Action Together Fund, which includes the Political Action

Together – Legislative and Educational Committee and  Political Action Together – Political

Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund

established pursuant to 2 U.S.C. §431 et seq. by the International Union of Painters and Allied

Trades for the purpose of advancing the political interests of its members by lawfully influencing

the selection, nomination, election and/or appointment of individuals for political office,

(d)     the Finishing Trades Institute f/k/a International Union of Painters and

Allied Trades Joint Apprenticeship and Training Fund ("FTI"),  which is a trust fund established

under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and

"employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(e)     the Painters and Allied Trades Labor Management Cooperation Initiative

("LMCI"), which is an entity that performs certain employer association functions, but is also an

unincorporated organization established under 29 U.S.C. §186(c)(9).

7.     The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary

Funds" and maintain their principal place of business and are administered from an office in

this district.

8.     The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and

agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.     The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are

jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund

are hereinafter jointly or severally referenced as the "Funds."

10.    Defendant, Hubi Construction Corp. d/b/a Hubi Const. Corp. ("Company") is a New York corporation and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption.  The Company does business with the Fund that is sufficient to create personal jurisdiction over the Company in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

### COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature page of the Labor Contract is attached as Exhibit 1.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds.  A true and correct copy of the Trust Agreement for the Fund is attached as Exhibit 2. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as Exhibit 3, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)    To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)    To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art.VI, §§3, 5).

(c)    To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 2, pp.16-17 (Art.VI, § 6).

(d)    To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.12.

14.    All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

### PLAINTIFFS

### v.

### COMPANY

15.    The allegations of Paragraph 1 through 14 are incorporated by reference as if fully restated.

16.    Company has failed to pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan from May 2007 through December 2007 in at least the sum of $8,914.32 based upon information presently available to the ERISA Funds in violation of 29 U.S.C. §1145.

17.    The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least $8,914.32 plus any additional amounts which may become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II – AUDIT

## PLAINTIFFS

### v.

## COMPANY

18.    The allegations of Paragraphs 1 through 14 are incorporated by reference as if fully restated.

19.    The amount of contributions the Company is required to pay to the Funds is based upon hours worked and paid to employees performing work covered by the Labor Contracts.

20.    The Funds are without sufficient information or knowledge to plead the precise nature, extent and amount of the Company's delinquency because the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Company.

21.    Computation of the precise amount of an employer's delinquency is best achieved by an audit of the employer's books and records to compare them to contractually-required remittance reports submitted by the employer.

22.    No audit of the Company's books and records has been performed for the period March 2007 to present.

23.    The Company is required by the Labor Contracts, Trust Agreements, plan documents of the ERISA Funds and/or applicable law to permit the Funds to audit its records, to cooperate in determining the contributions due the Funds and to pay the cost of the audit if found to be delinquent.

24.    The Funds and their fiduciaries or officers are adversely affected or damaged by the lack of an audit as, among other things, they have a duty to audit and confirm amounts due from contributing employers.

25.    The Funds and their fiduciaries or officers have no adequate remedy at law for lack of an audit as the calculation of any damages suffered as a result of the breach requires an audit.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)    Enjoin the Company, its officers, agents, servants, employees, attorneys and all others in active concert or participation with them to permit an audit of all records under the actual or constructive control of the Company for the period March 2007 to present and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due.

(2)    Order the Company to pay for an audit by a Certified Public Accountant chosen by the Funds, and

(3)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT III - CONTRIBUTIONS UNDER ERISA AFTER AUDIT

## PLAINTIFFS

**v.**

## COMPANY

26.    The allegations of Paragraphs 1 through 25 are incorporated by reference as if fully restated.

27.    On information and belief, the Company has failed to make contributions to the ERISA Funds in violation of 29 U.S.C. §1145 in a period not barred by an applicable statute of limitations or similar bar.

28.    The ERISA Funds are adversely affected or damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    After an audit, enter judgment against the Company in favor of Plaintiffs, for the benefit of the Funds, for the contributions found due and owing by the audit, together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document(s) or statute(s), the cost of the audit, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment all as provided under the Trust Agreements, Plan and 29 U.S.C. §1132(g)(2).

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT IV - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

#### v.

### COMPANY

29.    The allegations of Paragraphs 1 through 28 are incorporated by reference as if fully restated.

30.    The Company has not paid the Funds as required by the Labor Contract, and other documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents of the ERISA Funds.

31.    Plaintiffs have been damaged as a proximate result of the breach of Labor Contract and/or its incorporated documents by Company.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT VI - CONTRIBUTIONS UNDER CONTRACT – AFTER AUDIT

### PLAINTIFFS

v.

### COMPANY

32.    The allegations of Paragraphs 1 through 31 are incorporated by reference as if fully restated.

33.    Plaintiffs are damaged as a proximate result of the breach of the Labor Contract and its incorporated documents by Company with respect to any amounts found due in an audit.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK
Bar No. 478231
JUDITH SZNYTER*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0641
Attorneys for Plaintiffs

Date: April 11, 2008

*Application for Pro Hac Admission of JUDITH SZNYTER shall be made at the appropriate time.



RECEIVED

JUN 0 2 2003

G.S.T.

# AGREEMENT BETWEEN

# MASTER PAINTERS

# AND

# DISTRICT COUNCIL NO. 9

For the Counties of: ORANGE, ROCKLAND, DUTCHESS, ULSTER,

SULLIVAN, GREENE AND COLUMBIA

## MAY 1, 2003 – APRIL 30, 2008



EXHIBIT

1

# District Council No. 9 Agreement

## Index

| Article | Title | Page |
|---------|-------|------|
| Article I | Jurisdiction, Recognition, Scope of Work | 2 |
| Article II | Wages | 6 |
| Article III | Hours and Holidays | 10 |
| Article IV | Stewards | 10 |
| Article V | Check-Off | 11 |
| Article VI | Political Action Together | 11 |
| Article VII | Strikes and Lockouts | 11 |
| Article VIII | Joint Trade Board | 12 |
| Article IX | General Provisions | 13 |
| Article X | Welfare Fund | 14 |
| Article XI | Apprenticeship and Training Fund | 15 |
| Article XII | IUPAT Local 155 Labor Management Coalition | 17 |
| Article XIII | The I.U.P.A.T. Union and Industry National Pension Fund | 17 |

# TRADE AGREEMENT

Between

# INTERNATIONAL UNION
# OF PAINTERS and ALLIED TRADES
# A.F.L. - C.I.O.
# DISTRICT COUNCIL NO. 9

And

# MASTER PAINTERS

For the counties of: ORANGE, ROCKLAND, DUTCHESS, ULSTER, SULLIVAN GREENE AND COLUMBIA

## May 1, 2003 through April 30, 2008

This AGREEMENT made and entered into this 1st. day of May, 2003 and expires April 30, 2008, by and between INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO, District Council No. 9, New York, hereinafter referred to as the "Union", and MASTER PAINTERS and/or _____ hereinafter referred to as the "Employer". Witnesseth, as follows:

WHEREAS, the parties hereto desire to establish terms and conditions upon which Journeypersons and Apprentice Painters, Paperhangers, Drywall Finishers, Glaziers, Wood Finishers, Sandblasters and Lead Abatement workers, shall work for members of the EMPLOYER, (it being agreed that the word "JOURNEYPERSON" means an experienced Painter, Paperhanger, Drywall Finisher, Glaziers, Wood Finishers, Sandblasters lead abatement worker, or one who has completed one of the approved apprenticeship programs provided for herein).

NOW THEREFORE, the parties hereto agree as follows:

1

## ARTICLE V
## CHECK-OFF

Every Employer signatory to this Agreement hereby agrees to "check-off" from the gross taxable wages, defined herein as total wages, vacation, and P.A.T. contributions, of each Employee employed by such Employer during the term of this Agreement, administrative dues in the amounts set forth in the District Council No.9 Bylaws.

Employees shall deposit with the Union an executed authorization for deduction of administrative dues (check-off), which shall be continued in force for a period of this agreement and automatically renewed thereafter. The Union shall keep the authorization cards on file for inspection, should any question arise over authorization. The Employer assumes no obligation with respect to obtaining Dues Supplement Authorization Cards, it being understood that this shall be an obligation of the Union.

## ARTICLE VI
## POLITICAL ACTION TOGETHER FUND

Contractors agree to deduct from employees wages five cents ($.05) per hour. This five cents ($.05) per hour is to be contributed to the Political Action Together Fund of the International Brotherhood of Painters and Allied Trades. Employers that are a party to this agreement hereby agree to honor authorizations for check-off of political contributions from all employees who are Union members in the following form:

### AUTHORIZATION FORM FOR CHECK-OFF POLITICAL CONTRIBUTIONS

I hereby authorize my employer to deduct from my pay the sum of five cents ($.05) for each hour worked and to forward that amount to the PAT Political Committee , c/o International Brotherhood Painters and Allied Trades, 1750 New York Avenue, N.W. , Washington, DC 20006.

This authorization is signed freely and voluntarily and not out of any fear of reprisal and on the understanding that PAT Political Committee is engaged in a joint fund raising effort with the AFL-CIO, will use the money contributed to that effort to make political contributions and expenditures in connection with federal, state and local elections, and that this voluntary authorization may be revoked at any time by notifying my employer, PAT Political Committee and District Council No. ____ and/or Local Union No. ____ in writing of a desire to do so."

Name: _____    Signature_____

Social Security Number: _____

## ARTICLE VII
## STRIKES AND LOCKOUTS

**Art. VII, Sec. 1.** It is agreed that the Union shall not be held liable for any unauthorized strike or wildcat strikes. Any participant in any unauthorized strike or wildcat strike shall be disciplined by the Union.

**Art. VII, Sec. 2.** In consideration of the above by the Union the following is acceptable to the contractors, namely:

**Art. VII, Sec. 3.** There shall be no strikes, slowdowns or work stoppages by the members of District Council No. 9, during the term of this contract. Employees covered by such agreement shall, during the life thereof, have the right to respect any legal picket line validly established by any bona fide labor organization, and that the Union party to the agreement has the right to withdraw employees subject to the agreement whenever the Employer party to the Agreement is involved in a legitimate primary labor dispute with any bona fide labor organization.

**Art. IX, Sec. 3.** This Agreement shall be in full force and effect from May 1, 2003 to and including April 30, 2008 and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) days and not more than ninety (90) days prior to any subsequent contract year. Where no such cancellation or termination notice is served to negotiate changes or revisions in this Agreement, either party may serve upon the other a written notice not less than sixty (60) and not more than ninety (90) days prior to any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions or changes in this Agreement, by mutual consent, at any time during its term.

**Art. IX, Sec. 4.** In the event that the existing state of labor relations law is substantially changed by either the United States Supreme Court of the Congress, and such changes materially affect any provision of this Agreement, the either party hereto, on thirty (30) days notice, shall have to right to reopen this contract at any time during the term thereof, however such negotiations will be limited to only those portions of this Agreement so affected.

**Art. IX, Sec. 5.** This Agreement is approved as to form by the General Executive Board, subject to the provision that nothing contained herein shall be interpreted or applied in violation of any applicable State or National Law and with the understanding that the Brotherhood is not to be considered a party to the Agreement and assumes no responsibility under it.

**Art. IX, Sec. 6.** The Employer agrees that during the life of this Agreement, he will comply with all applicable federal and state laws concerning occupational safety and health, including all applicable standards, rules and regulations issued pursuant thereto.

**Art. IX, Sec. 7.** The Employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any way conflicts with the terms and provisions of this agreement. Any such agreement shall be null and void.

## ARTICLE X
### WELFARE FUND

**Art. X, Sec. 1.** The Welfare Fund, established in the 1949-1950 contract between the parties herein, shall continue for the duration of this agreement.

**Art. X, Sec. 2.** Its Trustees shall consist of equal representation of members of the Union and its Employer.

**Art. X, Sec. 3.** The administration of the Fund shall be performed by the Trustees in accordance with the Trustees' Agreement herein before executed, and by the rules and regulations which may be established by said Trustees.

**Art. X, Sec. 4.** This fund shall be as is set forth in Article II, for each and every hour worked, paid by the Contractors, for all members and of District Council No. 9/ Local Union No. 155. This payroll tax shall be paid monthly and such payment shall be paid by the 15th day of the succeeding month.

**Art. X, Sec. 5.** The no-strike clause as hereafter provided in article VII, shall not be operative as to a breach by the Employers of this article by the non-payment of the hourly rate as set forth in Article II. The parties agree that if a work stoppage results foreman Employer's failure to pay the hourly rate as set forth in Article II, the said employer, when work resumes, will be obligated to rehire all the employees who participated in the work stoppage under this Section. However, no employees will resume work until the Employer has made his Welfare payments current in addition to a sum equal to 25% of the deficiency to be paid to the Attorney as a penalty for said breach of this Article in this Agreement. There will be a 25% penalty on all overdue funds owed this Local. This reflects the charge the Attorney charges. The Funds are Welfare, Pension and Annuity, Apprenticeship, LMC, and Check-off.

14

**Art. X, Sec. 6.** The Trustees should be empowered and authorized to enact and promulgate rules and regulations from time to time regarding the eligibility requirements and benefits to be given to the employees, retired persons, disabled persons, persons entering the Armed Forces of the United States and self insured persons.

**Art. X, Sec. 7.** The expenses of the administration of this Fund shall be paid from the income to the Fund derived from the contributions paid by the contractors as heretofore set forth.

**Art. X, Sec. 8.** In the event there shall exist a dispute between the Trustees herein, relative to the administration of this Fund, which cannot be resolved between them, then in the event, the matter shall be referred to an impartial arbitrator chosen by the Trustees and the said arbitrator's decision shall be final.

**Art. X, Sec. 9.** Any employer who has not contributed for a period of one year to the fringe benefit funds of Local 155 or any other local affiliated with the I.U.P.A.T. shall post a minimum bond of $5,000.00. If a larger bond is needed the executive board of 155 shall decide how much it should be, depending on the size of the job.

**Art. X, Sec. 10.** If during the terms of this Collective Bargaining agreement, a compulsory Health Insurance Plan becomes lawful through Federal or State Legislation, the Welfare Fund provision in this Agreement shall be reopened for the purpose of revision with respect to such Health Insurance Plan compliance and/or Employer or Employee contributions thereto.

**Art. X, Sec. 11.** The Employer agrees that, during the term of this collective bargaining agreement, in the event that that the Local Union 155 Funds are merged into the D.C. 9, IUPAT Painting Industry Trust Funds, effective upon such merger, it shall become a contributing employer to the D.C. 9, IUPAT Trust Funds and to be bound by the terms of the Agreements and Declarations of Trust of the said D.C. 9, IUPAT Trust Funds. The employer further agrees that all contributions or remittances that it is required to make to, or reports that it is required to file with, the Local Union 155 Funds shall be so made or filed with the D.C. 9, IBPAT Trust Funds.

## ARTICLE XI
## APPRENTICESHIP AND TRAINING FUND

This Agreement between the Employer(s) and Union parties to this Agreement regarding payments to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT, JATF) is as follows:

**Art. XI. Sec. 1.**
(a) Commencing with the first day of June, 1996, and for the duration of this Agreement, and any renewals or extensions thereof, the Employer, as defined in the National Trust Indenture executed by and between the International Union of Painters and Allied Trades and employer associations in the industry, agrees to make payments to the Painters Local Union 155 JATC for each employee covered by this agreement, as follows:

(b) For each hour, or portion thereof, for which an employee receives pay, the Employer shall make a contribution of .36 cents to the above-named Apprenticeship Fund.

(c) For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable.

(d) Contributions shall be paid on behalf of any employee starting with the employee's first day or employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeypersons, trainees, and probationary employees.

(e) The payments to the Apprenticeship Fund required above shall be made to the Painters Local Union 155 J.A.T.C., which was established under an Agreement and Declaration of Trust, dated May 9, 1989. The Employer

15

hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as through he had actually signed the same.

(f) From the funds collected in the above manner, the Trustees of the Painters Local Union 155 J.A.T.C. shall hold in trust the sum of two cents ($.05) per hour, for each hour or portion thereof for which an employee receives pay, and remit said sum to the IUPAT, JATF, at such regular periods of time and in the manner and form as shall be determined by the trustees of the National JATF from time to time.

(g) The payments to the Apprenticeship Fund required in paragraph (f) above shall be made to the IBPAT, JATF, which was established under an Agreement and Declaration of Trust dated February 1, 1971. The Employer hereby agrees to be bound by and to the said agreement and Declaration of Trust, as though he had actually signed the same.

### Art. XI, Sec. 2.

(a) The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the IUPAT, JATF, such Trustees as are now serving or who will in the future serve, as employer Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

(b) The Union hereby irrevocably designates as its representatives on the Board of Trustees of the IUPAT, JATF, such trustees as are now serving, or who will in the future serve, as Union Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

(c) The parties hereto further agree to be bound by all actions taken by the trustees of the National JATF pursuant to the said Agreement and Declaration of Trust.

**Art. XI, Sec. 3.** All contributions shall be made at such time and in such manner as the trustees require; and the trustees shall have the authority to have an independent certified public accountant audit the payroll records of the Employer for the purpose of determining the accuracy of contributions to the Apprenticeship Fund.

**Art. XI, Sec. 4.** If an employer fails to make contributions to the Painters Local Union 155 J.A.T.C. such failure shall be deemed a violation of this agreement, and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collecting the payments due together with attorney's fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be set forth elsewhere in this Agreement.

**Art. XI, Sec. 5.** The Apprenticeship Plan adopted by the trustees of said Apprenticeship Funds shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Apprenticeship Funds as a deduction for income tax purposes.

## ARTICLE XII
## IUPAT LOCAL 155 LABOR MANAGEMENT COALITION

**Art. XII, Sec. 1.** Commencing the first day of June, 1996 and for the duration of the Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the IUPAT Painters Local 155 Labor Management Coalition for each employee covered by this Agreement, as follows:

(a). For each hours or portion thereof, for which an employee receives pay, the Employer shall make a contribution of $0.08 to the Fund, of which $.05 will be forwarded to the Painters and Allied Trades Labor Management Cooperation Fund.

(b). For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(c). Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

(d). The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

**Art. XII, Sec. 2.** The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

**Art. XII, Sec. 3.** All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and declaration of Trust.

**Art. XII, Sec. 4.** If an Employer fails to make contributions to the Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## ARTICLE XIII
## THE I.U.P.A.T. UNION AND INDUSTRY NATIONAL PENSION FUND

The only agreement between the Employer(s) and the Union parties to this agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

**Art. XIII, Sec. 1.**
(a) Commencing with the 1st day of December, 1974 and for the duration of the Agreement, and any renewals or extension thereof, the employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(b) For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution to the above named Pension Fund as is outlined in Art. II of this agreement; allocation to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry Annuity Plan shall be at the sole discretion of the Union.

17

(c) For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(d) Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this agreement. This includes, but is not limited to, Journeypersons, apprentices, helpers, trainees, and probationary employees.

(e) The payments to the Pension Fund required above, shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

**Art. XIII, Sec. 2.** The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

**Art. XIII, Sec. 3.** All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with Article X, Section 6 of the said Agreement and Declaration of Trust.

**Art. XIII, Sec. 4.** If an employer fails to make contributions to the Pension Fund within twenty days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney's fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

**Art. XIII, Sec. 5.** The Pension Plan and Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the IBPAT Union and Industry Pension Fund as a deduction for income tax purposes.

RECEIVED

Oct 0 5 2006

G.S.T.

DC711

# COLLECTIVE BARGAINING AGREEMENTS

Between

## DISTRICT COUNCIL 711
State of New Jersey
International Union of Painters and
Allied Trades



And

Garden State Council, Inc.

And the

Drywall and Interior Systems Contractors
Association, Inc. of New Jersey

And the

New Jersey Glass and Metal Contractors Association

OCT 1 3 2006

## TABLE OF CONTENTS

Article                                                                 Page

1 Recognition .................................................. 1
2 Jurisdiction .................................................. 3
3 Union Security ............................................. 9
4 Administration Dues ....................................... 10
5 Exclusive Hiring Hall ..................................... 10
6 Wage & Schedule .......................................... 13
7 Hours & Overtime .......................................... 18
8 Contractual Relations & Obligations .................... 20
9 Working Conditions ....................................... 22
10 Fringe Benefit Fund ...................................... 23
11 Cooperation & Advancement Funds ..................... 26
12 Political Action Fund ..................................... 27
13 Safety ..................................................... 28
14 Union Representative & Shop Stewards .............. 28
15 Subcontracting ........................................... 29
16 Preservation of Work Clause ........................... 29
17 Joint Trade Board ........................................ 30
18 Successor Clause ......................................... 33
19 General Savings Clause ................................. 34
20 Duration Clause .......................................... 35
Schedule A, new construction of all kinds .... 38
Schedule A 6.2 ........................................... 39
Schedule A, Paperhanger ............................... 40
Schedule B, Repaint, Paperhanger .................... 41
Schedule B ............................................... 42
Schedule B 6.2 ........................................... 43
Schedule C 6.1 ........................................... 44
Schedule C 6.2 ........................................... 45
Schedule D Industrial .................................... 46
Schedule D 6.2 Industrial ............................... 47
Schedule D 6.1 Industrial Repaint ..................... 48
Schedule D 6.2 Industrial Repaint ..................... 49
Schedule E Bridge ....................................... 50

# COLLECTIVE BARGAINING AGREEMENT

Between

## DISTRICT COUNCIL 711
State of New Jersey
International Union of Painters and
Allied Trades



And

Garden State Council, Inc.

under such working conditions shall not be discriminated against by the Employer. Any disagreement arising hereunder shall be submitted to the Joint Trade Board as provided by this Agreement. No Employee shall be discriminated against for his/her refusal to work with or use stilts, or machine type tools for which they have not received training. There shall be no restrictions on the use of materials, tools, equipment or other labor-saving devices or on production output by employees; provided however the employee has been qualified by District Council 711 IATC Fund to the use of the tools involved. Past practice and policy is and shall continue to be recognized, meaning mechanical and machine type tools will not be used without the express consent and permission of the Union which will not be open to dispute, except for trained or experienced employees of DISCA members.

9.4    The Employer shall abide by the terms of the Safety Act of the State of New Jersey as well as those of the Federal OSHA.

## ARTICLE 10
## FRINGE BENEFIT FUND

10.1    The Employers and the Union have established an Education and Training Fund to be known as the District Council 711 Education and Training Fund. Effective May 1, 2006, each Employer shall contribute to the Apprenticeship and Training Fund the amounts indicated in Schedule A

10.2    The Agreement between the Employers and the Union parties to this Agreement regarding payments to the International Joint Painting, Decorating and Drywall Apprenticeship and the Manpower Training Fund is as follows:

(A)    Commencing with first day of May, 2006, and for the duration of this Agreement and any renewals or extensions thereof, the Employer, as defined in the Agreement and Declaration of Trust executed by and between the International Union of Painters and Allied Trades and Employer associations in the industry, agrees to make payments to the National Apprentice Fund for each employee covered by this Agreement, as follows:

23

(B)    For each hour, or portion thereof, for which an employee receives pay, the Employer shall make a contribution in the amount indicated in Schedule A to the above named Apprenticeship Fund.

(C)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time and other hours for which pay is received by the employee shall be counted as wages for which contributions are payable.

(D)    Contributions shall be paid on behalf of any employee staring with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeymen, and probationary employees.

(E)    The payments to the Training Fund required above shall be made to the National Training Fund which was established under Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as though he had actually signed the same.

10.3    International Union of Painters and Allied Trades Union and Industry Pension Fund.

The only agreement between the Employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1.    (A)    Commencing with the first day of May, 2006, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the IUPAT Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

(B)    For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution of in the amount indicated in Schedule A to the above named pension fund; allocations to the IUPAT Union and Industry Pension Plan and to the IUPAT Union and Industry annuity Plan shall be as indicated in Schedule A.

24

(C)    For the purposes of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(D)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to apprentices, helpers, trainees, and probationary employees.

(E)    The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he/she had actually signed the same.

2.    The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

The Employer will not engage in any litigation against the Union, on a subrogation theory, contribution theory or otherwise, so as to obtain money judgment from it in connection with any work related disease, sickness, death, injury, or accident.

10.4    Health and Welfare Fund – By Agreement and Declaration of Trust dated June 1, 1990, the Association and Union Established the Painters District Council 711 Health and Welfare Fund.

(A)    Employer contributions shall be in the amounts indicated in Schedule A.

10.5    Fund Trustees shall be selected as indicated in Article 17 Sec 17.1

25

## ARTICLE 11
## COOPERATION AND ADVANCEMENT FUNDS

11.1    Labor Management Cooperation Funds:

1.    Commencing as of the effective date of this Agreement, and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the Painters and Allied Trades Labor Management cooperation Fund for each employee covered by this Agreement, as follows:

(A)    For each hour or portion thereof, for which an employee receives pay, the Employer shall make contribution of the amount indicated in Schedule A to the Fund.

(B)    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(C)    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but not limited to, apprentices, journeymen, and probationary employees.

(D)    The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust as amended from time to time, establishing the Fund.

2.    The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3.    All contributions shall be made at such times and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

26

11.2    **Industry Advancement Fund:**

1.    Effective May 1, 2006 each Employer shall make a contribution of three cents ($.03) per hour per Painter (contributions may be increased as determined by the Council), fifteen cents ($.15) per hour per Taper, and fifteen cents ($.15) per hour per Glazier for each hour worked by each employee to the "Industry Advancement Fund" heretofore established and administered by trustees appointed by each of the three (3) individual Associations solely for the advancement, and improvement of the trade and the payment of expenses in carry out such programs and responsibilities.

11.3    Stars program (Safety Training Awards Recognition) ~~By Agreement and Declaration of Trust date~~ ~~8/88~~ the Association and Union Established the Painters District Council 711 Stars Program. To Be ADMINISTERED BY THE EDUCATION & TRAINING FUND.

(A) Employer contributions shall be $0.02 for each hour, or portion thereof, for which the employee receives pay.

## ARTICLE 12
## POLITICAL ACTION FUND

12.1    Employers signatory to this Agreement shall deduct from the wage of each Union employee, the voluntary sum of ten cents ($.10) for each hour worked as a non-deductible political contribution to the DC#711 Political Action Committee (PAC).

12.2    The obligation of the Employer shall apply only as to those employees who have voluntarily signed a valid deduction authorization card.

(A)    The Union shall advise the Employer of any employee who has not signed a deduction authorization card.

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

## Establishing the

## International Painters and Allied Trades

## Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employer" or "Employers").

### WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3



be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.*    AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.*    PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

*Section 3.*    PENSION PLAN.  The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof.  The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.*    ANNUITY PLAN.  The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof.  The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.*    TRUSTEES.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)    The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees.  Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.*    UNION.  The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

36479-3

*Section 7.*    CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

*Section 8.*    COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

*Section 9.*    EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

*Section 10.*    EMPLOYER CONTRIBUTIONS. The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan. All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue , whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund. Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

# ARTICLE II

# GENERAL

*Section 1.*    ESTABLISHMENT OF FUND. As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

16479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further provide the means for financing the expenses of the Trustees and the operation and administration of the Fund, in accordance with this Agreement and Declaration of Trust.

## ARTICLE III

## UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION.  The operation and administration of the Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP.  The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions thereof. Each additional or successor Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be deemed to have accepted the Trust created and established by this instrument and to have consented to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

as hereinafter provided.

Section 4.    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

Section 5.    UNION TRUSTEES. The Union shall be and is empowered to appoint all Union Trustees.

Section 6.    EMPLOYER TRUSTEES. The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

Section 7.    REMOVAL OF TRUSTEES. The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

Section 8.    WHO MAY BE TRUSTEES. At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees. Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified during their tenure, until removed in accordance with provisions in this Trust. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

Section 9.    FORM OF NOTIFICATION. In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

- 7 -

36479-1

the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association. Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

Section 10.    VESTING OF POWERS AND DUTIES. Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV

## CANADIAN TRUSTEES

Section 1.    DECISIONS. The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

Section 2.    APPOINTMENT. The Canadian Board of Trustees shall consist of up to 6 Trustees. The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens. Canadian Employers may appoint 2 Trustees who shall be Canadian citizens. Employer Trustees of this Fund may appoint 1 Trustee.

Section 3.    REMOVAL. The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

*Section 4.*    WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*    PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

- 9 -

36479-3

# ARTICLE V

# POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*     PROPERTY AND ASSISTANCE.   The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*     CONSTRUCTION OF AGREEMENT. The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*     GENERAL POWERS.  The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

16479-3

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

Section 4.    COMPENSATION. The Union and Employer Trustees shall not receive compensation for the performance of their duties. However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

Section 5.    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

Section 6.    PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

36479-3

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

Section 7.    BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

36479-3

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

Section 8.    EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

Section 9.    DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

Section 10.    SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

- 14 -

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*    RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*    EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*    MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

16479-3

Section 4.    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

Section 5.    REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

Section 6.    AUDITS. The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

# ARTICLE VII

## PLAN OF BENEFITS

*Section 1.*    BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*    RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*    ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*    METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*    WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

Section 6.    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

Section 7.    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

Section 1.    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

Section 2.    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

36479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING. Action by the Trustees may also be taken by them in writing without a meeting: provided, however, that in such cases there shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES). In all meetings of the Trustees, two Trustees shall constitute a quorum for the transaction of business providing that there is at least one Employer and one Union Trustee present at the meeting. The vote of any absent Trustee shall be cast by the Trustees present, designated by the same party with the same force as if such absent Trustee was present. If at any time there is an unequal number of Employer and Union Trustees appointed, the Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES). All action by the Trustees shall be by majority decision of the Employer and Union Trustees. Such majority vote shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA). In all meetings of the Canadian

- 19 -

36479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 7.    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE IX

## IMPARTIAL ARBITRATOR

Section 1.    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

Section 2.    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

# ARTICLE X

# EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS. This Agreement and Declaration of Trust may be executed in any number of counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT. An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE. The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002. This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

# ARTICLE XI

# AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES. This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees. As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof. Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

Section 2.    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

# ARTICLE XII

# TERMINATION OF TRUST

Section 1.    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

Section 2.    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

Section 3.    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

36479-3

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

Section 4.    NOTIFICATION OF TERMINATION.  Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1.    NON-REVERSION.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

Section 2.    TERMINATION OF INDIVIDUAL EMPLOYERS.  An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

Section 3.    VESTED RIGHTS.  No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.     ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.     SITUS. The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.     CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.     CERTIFICATION OF TRUSTEES' ACTIONS.  The Co-Chairmen of the

- 24 -

36479.3

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.    NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.    SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
        James A. Williams
        General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
        John Frye
        Chairman

- 25 -

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

**Employer Trustees**

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

Robert Kucheran
William Nicholls

**Employer Trustees**

Adolf Gust
Richard Pazdzierski

International Painters And Allied Trades
Industry Pension Plan



Rules and Regulations
as amended and restated as of January 1, 2003



# IUPAT INDUSTRY PENSION PLAN                                PAGE i

## TABLE OF CONTENTS

ARTICLE 1.   ESTABLISHMENT & CONSTRUCTION .................................................. 1

Section 1.01   Establishment of Plan and Name ........................................ 1
Section 1.02   Purpose ............................................................................ 1
Section 1.03   Trustees ........................................................................... 1
Section 1.04   Plan Effective Date ......................................................... 1
Section 1.05   Amendment of Plan ......................................................... 2
Section 1.06   Prohibited Amendments ................................................... 2
Section 1.07   Merger or Transfer of Plan Assets ................................... 2
Section 1.08   Termination of Plan ......................................................... 2
Section 1.09   Termination Actions ........................................................ 3
Section 1.10   Notices ............................................................................ 3
Section 1.11   Unauthorized Representations .......................................... 3
Section 1.12   Construction .................................................................... 3
Section 1.13   Choice of Law ................................................................. 4
Section 1.14   Severability ..................................................................... 4


ARTICLE 2.   ADMINISTRATION ................................................................................ 4

Section 2.01   Powers Of Trustees ......................................................... 4
Section 2.02   Duties and Powers of Plan Administrator ........................ 5
Section 2.03   Discretion ........................................................................ 5
Section 2.04   Consultants ...................................................................... 5
Section 2.05   Delegation and Allocation of Responsibility .................... 5
Section 2.06   Reliance ........................................................................... 5
Section 2.07   Limitation of Liability ..................................................... 5
Section 2.08   Indemnity ........................................................................ 6


ARTICLE 3.   PARTICIPATION ................................................................................... 6

Section 3.01   Eligible Employees .......................................................... 6
Section 3.02   Entry Date ....................................................................... 7
Section 3.03   Termination of Participation ............................................ 7
Section 3.04   Reinstatement of Participation ......................................... 7
Section 3.05   Acceptance of a New Contributing Employer .................. 8
Section 3.06   Acceptance of A New Affiliated Employer ...................... 8
Section 3.07   Additional Conditions ..................................................... 9
Section 3.08   Delinquent Employers ..................................................... 9
Section 3.09   Mergers ........................................................................... 10


ARTICLE 4.   VESTING ............................................................................................... 10

Section 4.01   Vested Participant ........................................................... 10
Section 4.02   Service Vesting ............................................................... 10
Section 4.03   Age Vesting .................................................................... 11
Section 4.04   Termination Vesting ....................................................... 11
Section 4.05   Vesting Changes ............................................................. 11
Section 4.06   Years of Vesting Service ................................................. 11
Section 4.07   One-Year Break-in-Service ............................................. 12
Section 4.08   Effect of One-Year Break ............................................... 12
Section 4.09   Cure of One-Year Break .................................................. 12
Section 4.10   Family and Medical Leave ............................................... 13
Section 4.11   Qualified Military Service ............................................... 13
Section 4.12   Permanent Break in Service ............................................ 14

## IUPAT INDUSTRY PENSION PLAN                                    PAGE ii

Section 4.13    Effect of Permanent Break ............................................................................ 14

ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION ...................................... 15

Section 5.01    Accrued Benefit ........................................................................................... 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification .......... 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount ........ 17
Section 5.05    Benefit Credit for Service during the Contribution Period .............................. 19
Section 5.06    Maximum Contribution  Rates ...................................................................... 19
Section 5.07    Extra Contributions ..................................................................................... 20
Section 5.08    Contribution Rate ........................................................................................ 20
Section 5.09    Contribution Rate Changes .......................................................................... 20
Section 5.10    Benefit Break-In-Continuity ......................................................................... 21
Section 5.11    New Groups ................................................................................................ 22
Section 5.12    Reciprocal Pension Agreements .................................................................... 22
Section 5.13    Merger Agreements ..................................................................................... 23
Section 5.14    Post-Retirement Benefit Increases ............................................................... 23

ARTICLE 6.    PENSION BENEFIT PAYMENT ................................................................ 24

Section 6.01    Normal Retirement Pension – Eligibility ....................................................... 24
Section 6.02    Normal Retirement Age ................................................................................ 24
Section 6.03    Normal Retirement Pension – Amount .......................................................... 24
Section 6.04    Late Retirement Pension – Eligibility ............................................................ 25
Section 6.05    Late Retirement Pension – Amount ............................................................... 25
Section 6.06    Mandatory Payment of Benefits ................................................................... 25
Section 6.07    Mandatory Payment - Amount ..................................................................... 26
Section 6.08    Special Early Retirement Pension - Eligibility ............................................... 27
Section 6.09    Special Early Retirement Pension - Amount .................................................. 28
Section 6.10    Early Retirement Pension —Eligibility .......................................................... 28
Section 6.11    Early Retirement Pension - Amount .............................................................. 28
Section 6.12    Disability Pension –– Eligibility .................................................................... 29
Section 6.13    Disability Pension - Amount ......................................................................... 30
Section 6.14    Effect of Recovery by a Disabled Pensioner .................................................. 30
Section 6.15    Early Vested Pension –– Eligibility ............................................................... 31
Section 6.16    Early Vested Pension - Amount .................................................................... 31
Section 6.17    Partial Pension - Eligibility ......................................................................... 32
Section 6.18    Partial Pension - Amount ............................................................................. 32
Section 6.19    Partial Pension – Payment Forms ................................................................. 32
Section 6.20    Non-Duplication of Pensions ........................................................................ 32
Section 6.21    Taxes .......................................................................................................... 33

ARTICLE 7.    STANDARD PENSION PAYMENT FORMS ............................................. 33

Section 7.01    General Payment Restrictions ....................................................................... 33
Section 7.02    Commencement of Benefits Generally ........................................................... 33
Section 7.03    Married Participants - General Rules ............................................................ 34
Section 7.04    Single Participants - General Rules ............................................................... 34
Section 7.05    Small Benefits ............................................................................................. 34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                for Married Participants ............................................................................... 35
Section 7.07    Waiver of Husband-and-Wife Pension ........................................................... 35
Section 7.08    Pre-retirement Surviving Spouse Pension ...................................................... 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension ....................................... 37
Section 7.10    Pre-retirement Surviving Spouse Pension - Spouse Alternatives ...................... 38
Section 7.11    Qualified Domestic Relations Orders ............................................................. 39

**IUPAT INDUSTRY PENSION PLAN**                                          **PAGE iii**

Section 7.12  Qualified Domestic Relations Order Procedures ................................................. 39
Section 7.13  Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
              Payment for Unmarried Participants ................................................................ 40
Section 7.14  Pre-Retirement Death Benefit - Eligibility .................................................... 40
Section 7.15  Post-Retirement Death Benefit — Amount ......................................................... 41
Section 7.16  Beneficiary .................................................................................. 41
Section 7.17  Retirement and Suspension of Benefits Before Normal Retirement Age ............................ 42
Section 7.18  Pensioner Reporting of Work Before Normal Retirement Age ...................................... 42
Section 7.19  Resumed Benefits Before Normal Retirement Age – Eligibility .................................. 43
Section 7.20  Resumed Benefits Before Normal Retirement Age - Amount ....................................... 43
Section 7.21  Suspension of Benefits after Normal Retirement Age ........................................... 44
Section 7.22  Plan Disclosure of Suspension Rules .......................................................... 45
Section 7.23  Pensioner Reporting of Work after Normal Retirement Age ...................................... 45
Section 7.24  Advance Determinations of Suspendible Work ................................................... 46
Section 7.25  Plan Notice of Suspension after Normal Retirement Age ........................................ 46
Section 7.26  Resumption of Benefit Payments after Normal Retirement Age - Eligibility ..................... 46
Section 7.27  Resumption of Benefit Payments after Normal Retirement Age – Amount .......................... 47
Section 7.28  Waiver of Suspension ......................................................................... 48
Section 7.29  Incompetence or Incapacity of a Pensioner or Beneficiary ..................................... 48
Section 7.30  Non-Assignment of Benefits ................................................................... 48
Section 7.31  Payments to Minors ........................................................................... 49

ARTICLE 8.    OPTIONAL FORMS OF PENSION PAYMENT ............................................................ 49

Section 8.01  General ...................................................................................... 49
Section 8.02  Joint and Survivor Options ................................................................... 50
Section 8.03  Social Security (Level Income) Option ........................................................ 52
Section 8.04  Combined Level Income and Joint and Survivor Option .......................................... 52
Section 8.05  Ten Year Certain Option ...................................................................... 53
Section 8.06  Lump Sum Payment Option ...................................................................... 53
Section 8.07  Benefit Payment Restrictions ................................................................. 54
Section 8.08  Trustee-to-Trustee Transfers - Rollovers ..................................................... 58

ARTICLE 9.    CLAIMS PROCEDURE & BENEFIT PAYMENTS .......................................................... 60

Section 9.01  Application ................................................................................... 60
Section 9.02  Partial Pension - Application Procedure ...................................................... 60
Section 9.03  Information and Proof ........................................................................ 60
Section 9.04  Trustee Discretion and Authority ............................................................. 60
Section 9.05  Initial Claim Determination .................................................................. 61
Section 9.06  Request for Review ........................................................................... 61
Section 9.07  Decision on Review ........................................................................... 61
Section 9.08  Administrative Delay ......................................................................... 62
Section 9.09  No Rights to Assets .......................................................................... 62

ARTICLE 10.   FUNDING ...................................................................................... 62

Section 10.01 Funding Policy ............................................................................... 62
Section 10.02 Trust for Participants ....................................................................... 62
Section 10.03 Investments .................................................................................. 62
Section 10.04 Source of Benefit Payments ................................................................... 63
Section 10.05 Expenses ..................................................................................... 63
Section 10.06 Non-Reversion ................................................................................ 63
Section 10.07 Employer Contributions ....................................................................... 63
Section 10.08 Irrevocability of Contributions .............................................................. 63
Section 10.09 Qualified Military Service Contributions ..................................................... 63

# IUPAT INDUSTRY PENSION PLAN

PAGE iv

Section 10.10  Return of Mistaken Contributions .............................................................. 64
Section 10.11  Delinquent Employers ................................................................................. 64
Section 10.12  Collection of Delinquent Contributions ...................................................... 65

ARTICLE 11.  CONTRIBUTING EMPLOYER WITHDRAWAL ..................................... 66

Section 11.01  Employer Withdrawal - In General ............................................................. 66
Section 11.02  Control Group Employer - Definition ......................................................... 66
Section 11.03  Construction Industry Employers - Definition ........................................... 66
Section 11.04  Complete Withdrawal - Defined ................................................................. 66
Section 11.05  Partial Withdrawal - Defined ...................................................................... 67
Section 11.06  Unfunded Vested Liability ......................................................................... 67
Section 11.07  Title IV Vested Benefits ............................................................................. 67
Section 11.08  Initial Unfunded Vested Liability ............................................................... 68
Section 11.09  Annual Change in Unfunded Vested Liability ........................................... 68
Section 11.10  Reallocated Liability ................................................................................... 68
Section 11.11  Mergers ....................................................................................................... 69
Section 11.12  Amount of Control Group Employer Liability for Complete Withdrawal ... 69
Section 11.13  Employer Proportionate Share of Initial Unfunded Vested Liability ......... 70
Section 11.14  Employer Proportionate Share of Annual Changes in Unfunded Vested Liability ... 70
Section 11.15  Apportionment Base Period ....................................................................... 71
Section 11.16  Base Period Employer Contributions ......................................................... 71
Section 11.17  Pre-1980 Terminated Unit Contributions ................................................... 72
Section 11.18  Employer Proportionate Share of Annual Charges for Reallocated Liability ... 72
Section 11.19  Transfers of Liability .................................................................................. 72
Section 11.20  De Minimis Reduction ................................................................................ 73
Section 11.21  20-Year Payment Limitation ...................................................................... 73
Section 11.22  Insolvency Reduction .................................................................................. 73
Section 11.23  Partial Withdrawal Liability - Amount ....................................................... 73
Section 11.24  Payment of Withdrawal Liability ............................................................... 73
Section 11.25  Notice and Collection of Withdrawal Liability .......................................... 74
Section 11.26  Withdrawal Liability Review ...................................................................... 74
Section 11.27  Withdrawal Liability Arbitration ................................................................ 75
Section 11.28  Withdrawal Liability Default ...................................................................... 75
Section 11.29  Withdrawal Liability Collection Litigation ................................................ 75
Section 11.30  Withdrawal Liability Abatement – Construction Industry Employers ....... 76
Section 11.31  Withdrawal Liability Abatement – Other Employers ................................. 76
Section 11.32  Mass Withdrawal ........................................................................................ 76

ARTICLE 12.  TAX RULES AND AFFILIATED EMPLOYERS ..................................... 76

Section 12.01  Non-Discrimination .................................................................................... 76
Section 12.02  Affiliated Employer Participation .............................................................. 77
Section 12.03  Conditional Adoption ................................................................................. 77
Section 12.04  General Affiliated Employer Rules ............................................................ 77
Section 12.05  Limitation Employer ................................................................................... 78
Section 12.06  Top-Heavy Requirements ........................................................................... 78
Section 12.07  Maximum Benefit Limit ............................................................................. 80
Section 12.08  Defined Benefit Plan Limit ........................................................................ 80
Section 12.09  Section 415 Aggregation ............................................................................ 82
Section 12.10  Maximum Benefits Coordination ............................................................... 82
Section 12.11  Restricted (High-25) Employees ................................................................ 82

ARTICLE 13.  DEFINITIONS .......................................................................................... 83

## IUPAT INDUSTRY PENSION PLAN                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

### Section 10.04   Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan.  This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05   Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10.06   Non-Reversion.

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07   Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08   Irrevocability of Contributions.

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09   Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

(1)     the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

(2)     average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c) Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

(1)     Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

(2)     Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a) The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b) A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c) A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d) A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a) The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b) To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

     (1)    the unpaid contributions,

     (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

     (3)    liquidated damages equal to the greater of

         (A)   the amount of interest charged on the unpaid contributions, or

         (B)   20 percent of the unpaid contributions,

     (4)    reasonable attorneys' fees and costs of the action, and

     (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

AMENDMENT TO THE
INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
(as restated effective January 1, 1999)

Major Topic:           Title to Plan Assets

General Effective Date:     January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.    Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

122882-1

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
    Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
    James A. Williams, Co-Chair

Date: _October 14_, 2003

122382-1

2

## CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | Hubi Construction Corp. d/b/a Hubi Const. Corp., 40-09 73rd Street, Suite 9, Woodside, NY 11377 |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved.

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Kent Cprek, Esquire
Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,
510 Walnut Street, Phila., PA 19106
(215) 351-0615

**ATTORNEYS (IF KNOWN)**

---

**II BASIS OF JURISDICTION**
(SELECT ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (FOR DIVERSITY CASES ONLY!)
(SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| O  G.  Habeas Corpus/2255 | O  H.  Employment Discrimination | O  I.  FOIA/PRIVACY ACT | O  J.  Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  K.  Labor/ERISA (non-employment) | O  L.  Other Civil Rights (non-employment) | O  M.  Contract | O  N.  Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Select YES only if demanded in complaint   JURY DEMAND: ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

DATE  April 11, 2008     SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.